# BABSON *v.* COX.

PRINCIPAL AND AGENT; REAL-ESTATE BROKERS; EQUITY; LIENS.

1. Real-estate brokers who sign a contract to sell real estate as agents for the seller, and who, after his approval, receive a deed to the property from him for delivery to the buyer, and who are paid a brokerage by the seller, are his agents, and not the agents of the buyer, and have authority to receive as agents for the seller the agreed consideration for the deed.

2. Where the buyer of real estate receives a deed therefor, with special warranty against encumbrances, and pays over the purchase price to the brokers of the seller, the buyer can recover on such warranty from the seller, where it develops that the brokers thereafter accounted to the seller for the difference between an existing encumbrance on the property and the purchase price, but fraudulently failed to pay and secure a release of such encumbrance.

3. A decree of the lower court *affirmed* which established a lien in favor of the complainant, who in buying real estate had taken a deed containing a special warranty against encumbrances, upon the only other real estate of the deceased seller, to compensate the complainant for loss he had sustained by a breach of the warranty.

No. 1954. Submitted December 8, 1908. Decided March 2, 1909.

HEARING on an appeal from a decree of the Supreme. Court of the District of Columbia sitting as a court of equity, canceling a deed of trust note, directing a release of the deed of trust securing the same, and establishing a lien upon certain real estate.             *Affirmed.*

The COURT in the opinion stated the facts as follows:

Francis M. Cox filed this bill against John W. Babson, Thomas R. Martin, Lee R. Martin, Guy H. Johnson, Joseph

D. Sullivan, and George W. Evans. The substantial allegations of the bill are the following:

On July 31, 1906, Eliza A. Babson, acting through her agents, Thomas R. and Lee R. Martin, real-estate agents trading in the partnership name of Martin Brothers, contracted in writing with the plaintiff to convey to him lot 36 in Flanagan's subdivision, of square 989, in the city of Washington, for the sum of $3,750, specially warranting the same against all encumbrances. She appointed Martin Brothers her agents to consummate said sale. Said contract to convey is signed by Martin Brothers as agents for Eliza A. Babson, accepted by plaintiff, and approved by her through her son John W. Babson, defendant, and acknowledges the receipt of a deposit of $100 made by plaintiff. Eliza A. Babson executed a deed to plaintiff on August 4, 1906, containing the special warranty aforesaid, and sent the same to her said agents, Martin Brothers, to tender the same to plaintiff and demand payment as stipulated in said contract. In accordance with their demand, plaintiff paid over to them the additional sum of $3,150, executed his note for $500, and executed a trust deed on the conveyed premises to George W. Evans and Thomas R. Martin, trustees, to secure payment of said note, due five years after date. After the delivery of the money and note aforesaid to said agents, they delivered the deed to plaintiff. Notwithstanding the covenant of warranty in said deed and the receipt of the purchase money in full, the said Eliza A. Babson neglected to discharge the lien of a deed of trust previously executed by her on said property to secure a loan of $2,000. Eliza A. Babson was in feeble health, and defendant acted as her attorney in fact in the transaction. He was informed of all the circumstances of the transaction, and on January 29, 1907, transferred the said note, which was payable to his order, to Thomas R. Martin. He also knew that the covenant of warranty in said deed had been broken. Eliza A. Babson died March 17, 1907, leaving defendant her sole heir at law. Said note is still in the possession of Martin Brothers. Plaintiff relied upon said special warranty, and believed said property was free from every en-

cumbrance until about April 10, 1907, when he saw an advertisement of the same for sale by the trustees in the said deed of trust for $2,000. To prevent said sale he paid the costs and charges of the trustees and all arrears of interest and charges on the said debt, amounting to about $200, leaving the principal sum unpaid. Eliza A. Babson died seised and possessed of lot 35 in the subdivision aforesaid adjoining the lot conveyed to plaintiff. Said lot, subject to a lien, descended to and became the property of defendant, who is about to sell the same. The want of any personal estate left by the said Eliza A. Babson, and the small value of the equity of redemption in the lot last mentioned, make the cancelation of the $500 note essential to the relief of the plaintiff, as well also as the aid of the court to preserve the estate of said Eliza A. Babson.

The prayers are: First, that defendants, Martin Brothers, and Johnson and Sullivan, their assignees in bankruptcy, be restrained from negotiating or transferring said $500 note, and that the same be canceled; second, that defendants be restrained from alienating or encumbering the said lot 35; third, that plaintiff be decreed a lien on said lot, and that the same be sold to discharge the lien.

By the amended bill, Marian E. J. Martin, wife of Lee R. Martin, was made a party defendant, with the allegation that the $500 note, indorsed by defendant to Thomas R. Martin, and not subsequently indorsed by him, was in her possession, which she had fraudulently acquired in the pretended capacity of an innocent holder of the same.

The answer of John W. Babson denied that the money alleged to have been paid by plaintiff to Martin Brothers was paid to them as agents for the said Eliza A. Babson, or that they were her agents or had any authority to receive the same, that George W. Evans, salesman of Martin Brothers, had offered defendant $3,500 for the lot; that defendant said his mother wanted $4,000 for the property, whereupon the plaintiff called in person upon the defendant, and they finally agreed upon the purchase price of $3,750; but neither this defendant nor his mother at any time constituted or recognized the said Mar-

tin Brothers as her agents, understanding and believing all the time that the complainant was a purchaser, a client of said Martins; the actual consummation of the sale being effected by this defendant acting for his mother, with the complainant personally, and not through the agency of the said Martin Brothers; that Martin Brothers were the agents and representatives of the plaintiff.

Lee R. Martin answered generally, and regarding the note alleges that it was delivered to Marian E. J. Martin in payment of money belonging to her, used by Thomas R. Martin.

Marian E. J. Martin answered to the same effect.

George W. Evans answered, alleging that he had no interest in the matter save as trustee under the deed of trust to secure the $500 note.

No answer appears in the record for Sullivan and Johnson, who appear to have been assignees in bankruptcy of Martin Brothers.

Testimony was taken by both parties, and on the hearing the court entered a decree canceling the said $500 note, and ordering its delivery to the plaintiff, declaring a lien on lot 35 for the remaining $1,500 of the encumbrance thereon, and appointing trustees to sell the same.

Babson alone has appealed from the decree.

The following facts are established by the testimony of the parties:

Martin Brothers, a firm composed of Thomas R. Martin and Lee R. Martin, were real-estate brokers, and G. W. Evans was employed by them as a salesman.

Evans had been informed by the defendant that his mother would sell the property in question, but he did not then authorize Martin Brothers to sell it. Plaintiff was a retired editor and lawyer, who desired to invest between $3,000 to $4,000 in rent-paying property in the city of Washington. He had no acquaintance with Martin Brothers, but had read one of their advertisements, which however, did not embrace this property. He called at their office and met Evans, who went with him to examine the lot and the house thereon, which Evans

informed him was rented at $30 per month. Calling with Evans on defendant, he learned that the rent received was $25 per month. He finally made an offer to Evans of $3,500 for the property. Evans reported this to defendant, whose price was $4,000, but who finally agreed to take $3,750. Informed of this, plaintiff agreed to give $3,250 in cash, and a note for $500 to be secured by deed of trust on the property. He required a deed with special warranty against encumbrances. The following paper was then prepared in the office of Martin Brothers:

$100.00　　　　　　　　Washington, D. C., July 31, 1906.

Received of Mr. Francis M. Cox a deposit of One Hundred Dollars as part of the purchase price of Sub. lot 36 in square 989 with the improvements thereon, known as 108 11th Street, Southeast, in the City of Washington, District of Columbia, this day sold to said Francis M. Cox upon the following terms, viz.:

Price of property $3,750.

($　　　　　), of which sum

($3,250.　　) is to be paid in cash, and the balance of $500 represented by promissory note of the purchaser, bearing interest at 5 per centum per annum, payable five years from date, is to be secured by deed of trust on said property. The purchaser agrees to make full settlement in accordance with the terms of sale within fifteen days from the date hereof, or the deposit will be forfeited at the option of the vendor, it being understood and agreed, however, that the forfeiture of deposit does not relieve the purchaser from complying with the terms of this contract.

Property is sold free of encumbrance.

Title to be good of record or deposit to be refunded.

Interest on deeds of trust, insurance, and taxes to be adjusted to date of transfer.

Examination of title and conveyancing to be at cost of pur-

chaser, and neither seller nor his agents assume any respon-
sibility for cost of sale should title prove defective.

This contract is made subject to the approval of the owner.

Martin Bros., *Agents,*

Per G. W. Evans.

Accepted by

Francis M. Cox, *Purchaser.*

Approved by

Eliza A. Babson, *Owner,*

By J. W. Babson, *Att'y.*

When shown to plaintiff it bore the signature of Martin
Brothers, agents, and that of defendant, approving the same,
as agent for his mother. Plaintiff wrote and signed his accept-
ance, paid Martin Brothers the $100 deposit, and received the
paper. The Columbia Title Company was selected by plaintiff
to examine the title. In the meantime, August 4, Mrs. Babson
executed a deed conveying the property to plaintiff. She was
then in the State of Maine, and the deed was sent to defendant,
who gave it to Martin Brothers for delivery. The title com-
pany was slow in examining the title, and plaintiff, who was
in bad health, desired to leave the city at once. The title com-
pany informed him that it had found the title good in Mrs.
Babson, but had not had time to make further examination of
the records, and could not then give the necessary certificate.
Plaintiff, relying on the fact that the grantor had title and the
special warranty against encumbrances; and desiring to leave,
concluded the purchase without waiting for the final certificate.
He called on Martin Brothers, gave them his check for the ad-
ditional $3,150, executed his note for the $500, with a trust
deed to secure the same, and received the deed. Plaintiff had
heard from Evans that there was an unpaid balance of a lien
on the property, but that its payment would be cleared up
by defendant, and title would be made free of the encumbrance.
This was during the negotiation for the purchase. He under-
stood from Martin Brothers that the trust had been paid off
when the deed was delivered. In June, 1906, Mrs. Babson ob-

tained a loan from a building association of $2,000 and exe-
cuted a trust deed to secure the same; $20 monthly payments
were to be made thereon. These payments were made by Mrs.
Babson to and included August, 1906. Payments were again
made in November of arrears to date, but by whom does not
appear. No payments were made thereafter, and in April,
1907, the property was advertised for sale by the trustees. The
custom of the association had been to send notice of monthly
dues to the borrower. The entire loan could have been paid at
any time under the contract. Plaintiff called after the adver-
tisement, and expressed his surprise that the mortgage had not
been discharged. To prevent the sale he paid up the dues, the
fees and costs of the trustees, and the advertisement was dis-
continued. The first information that plaintiff had of the fail-
ure to discharge the encumbrance was the advertisement of the
sale. He thereafter paid some of the dues. The encumbrance
now stands unpaid for the sum of $1,946. At the time of
plaintiff's payment to Martin Brothers, they rendered him a
statement showing the amounts to be paid by him, which in-
cluded the title company's charges for examination. Defend-
ant had a settlement with Martin Brothers, who rendered an
account showing the money received, and charging the amount
of the encumbrance, and also their commissions of 3 per cent.
They paid defendant the balance of the purchase money, name-
ly, $1,141.87. On January 28, 1907, defendant sold the note
for its face value and accrued interest to Martin Brothers, and
indorsed it to Thomas R. Martin. Defendant was informed in
September, 1906, that there were dues on the encumbrance.
He saw Evans, who told him that there was a mistake about
it; that he thought it had been paid, and would see Martin
about it. Defendant heard no more of the matter until he saw
the advertisement in April, 1907. Martin Brothers afterwards
went into bankruptcy. The note in the possession of Marian
E. J. Martin was evidently taken by her without consideration.

No opposition is made to so much of the decree as directs the
cancelation of the $500 note.

*Mr. O. B. Hallam* and *Mr. W. M. Hallam* for the appellant.

*Mr. T. L. Jeffords* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The first contention of the appellant is that Martin Brothers, were, in fact, the agents of plaintiff, and not of defendant, in the sale. This is without foundation. Plaintiff called on them to purchase property if he could find any that suited him, in their hands for sale. That the property was not then under their agency is immaterial. They saw defendant, and obtained his authority to make the sale. They entered into a written contract with the purchaser, executing it as agents of the seller, who expressly approved the same. The defendant's mother, whom he represented, executed the deed in accordance with the contract, and sent it to the agents for delivery to the purchaser. After the conclusion of the sale, defendant paid the agents the usual commissions. The agents, having closed the sale in strict conformity with the terms of the contract, and being intrusted with the deed for delivery, had the power to receive the agreed consideration. *Peck* v. *Harriott,* 6 Serg. & R. 149, 9 Am. Dec. 415; *Morrill* v. *Cone,* 22 How. 75, 81, 16 L. ed. 253, 255.

It is further contended that, notwithstanding Martin Brothers may have been the agents of the seller, empowered as aforesaid, the purchaser made them his agents for the purpose of discharging the encumbrance out of the purchase money. The testimony does not sustain this contention. By the terms of the special warranty, it was the duty of the seller to discharge this encumbrance, and, while the purchaser may have been careless in not seeing that it was in fact done before making payment, he had the right to rely on the warranty, and was under no obligation to see to the appropriation of his money thereto by the defendant's agents. The defendant was more negligent. He knew that there was a warranty against the encumbrance, and that it was the duty of the seller to discharge it. He took

the word of the fraudulent agents that the encumbrance had
been paid out of the purchase money, and, without inquiry,
paid their commissions and received the remainder of the
money. It being his duty to see that the encumbrance was ac-
tually discharged, he must suffer the consequences of his mis-
placed confidence in the agents.

The decree will be affirmed, with costs.        *Affirmed.*